FILED

December 16, 2014

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:54 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: KEVIN JEWELL

DOCKET NO. 2014-05-0003

STATE FILE NO. 63150-2014

EMPLOYER: COBBLE CONSTRUCTION
AND ARCUS RESTORATION

DATE OF INJURY: August 2, 2014

INSURANCE CARRIER: UNINSURED

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Kevin Jewell pursuant to Tennessee Code Annotated section 50-6-239. In addition to this filing, Cobble Construction has also filed a Request for Expedited Hearing. Mr. Jewell proceeded *pro se* while Cobble was represented by Chad Hennessee and Arcus Restoration (Arcus) was represented by David Drobney. Upon review of Mr. Jewell's request and the testimony and evidence presented at the hearing, the undersigned enters the following order granting Mr. Jewell's request for temporary disability and medical benefits.

### Issues

1. Whether Mr. Jewell is an employee of Cobble Construction.
2. If he is an employee, whether Mr. Jewell has suffered a compensable claim and is entitled to workers' compensation benefits.

### Evidence Submitted

The Court received and considered the following evidence. There were no objections to the introduction of any of these exhibits.

1. Medical Records of Dr. Charles Kaelin
2. Affidavit of Kevin Jewell dated August 29, 2014
3. Reproduction of text messages for phone number (615) 653-7040
4. Affidavit of Kevin Jewell dated September 18, 2014

1

5. Physical Therapy Records from Tennessee Sports Medicine
6. Photographs of five checks from Chad Cobble to Kevin Jewell
7. Wage Statement
8. First Report of Injury
9. Notice of Claim Denial dated August 28, 2014
10. Medical Records from American Family Care

## History of Claim

Mr. Cobble contacted Mr. Jewell on June 12, 2014, and asked him if he was working. Mr. Jewell told him that he was not working but that he had interviewed for several positions and was waiting to hear back. Mr. Cobble offered him a job paying $18.00 per hour for full time work but Mr. Jewell's pay was later reduced to $17.00 per hour. His average weekly wage was $502.92. It is undisputed that Cobble Construction did not have workers' compensation coverage.

Mr. Jewell began working for Cobble Construction sometime on June 17, 2014. When Mr. Jewell asked what tools he needed to bring, Mr. Cobble told him to bring paint tools. Over the next several weeks, Mr. Jewell worked at sites around the Nashville area. He worked alone on many jobs but on some days he worked with other persons from Cobble Construction or with Mr. Cobble. He helped build stair risers and treads, he installed cabinets with a co-worker named Eric, he reinstalled a sink, he installed interior doors and also installed a floor.

On June 20, 2014, at the end of his first week of work, Mr. Cobble paid Mr. Jewell with a personal check in the amount of $700.00. On the "For" line of the check Mr. Cobble wrote "38.5 hrs." For the next several weeks, Mr. Jewell received similar personal checks as payment for his work; the "For" line on each check stated a number of hours. (Exh. 6).

On August 2, 2014, Mr. Jewell was working at a home in Brentwood. Arcus was the general contractor on the worksite. To start the day, Mr. Jewell performed several tasks around the house that were mainly related to painting. Sometime around 2:00 pm, Mr. Jewell claims that he went into the homeowner's bathroom and attempted to move a slab of granite that was sitting on a counter or on the area surrounding the bathtub. The granite slab was approximately six inches wide and twelve feet long. Mr. Jewell stated that his back began to burn when he attempted to move the granite. He further stated that he then attempted to paint a handrail but his back continued to burn. The following morning, Mr. Jewell sent Mr. Cobble a text message informing that he had been injured.

Mr. Jewell claimed that he moved the granite because the homeowner had expressed concern about where it was placed as it was blocking access to the bathtub. Mr. Jewell further stated that he and a Cobble Construction employee had placed the granite in the area around the bathtub previously so that the floor finishers could perform their work. Mr. Jewell stated that he did this after Mr. Cobble asked him and another Cobble Construction employee to pick all items up off of the floor in preparation for the floor installers. Mr. Jewell felt some responsibility to move the granite because he had placed it in the area around the bathtub. Mr. Cobble testified that he never asked Mr. Jewell to move the granite. He further stated that it was not Mr. Jewell's job to move the granite and that Mr. Jewell knew he was not supposed to touch it.

2

The homeowner, Polly Krickbaum, was present in the home and testified concerning her memory of the events on the date of the accident. She stated that she did not see Mr. Jewell attempt to move the granite. She further stated that she never asked him to move it and would not have done so because she thought Mr. Jewell could have gotten hurt. Ms. Krickbaum admitted that she told Mr. Jewell that the granite was so big that if it slipped it could hurt someone or damage the floor. Ms. Krickbaum further testified that she did not notice that Mr. Jewell was hurt when he left work that day.

In the days following his injury, Mr. Cobble and Mr. Jewell exchanged several text messages. In those messages, Mr. Cobble asked about Mr. Jewell's back and expressed concern. Mr. Jewell told Mr. Cobble that he had been to the doctor and had been giving restrictions that prohibited heavy lifting. The medical records concerning these doctor's visits and the workplace restrictions were not made an exhibit at the hearing. Mr. Jewell also inquired about workers' compensation coverage:[1]

August 3, 2014

> Mr. Jewell: hey bro not gonna make smyrna taday miss polly rasin hell bout all that shit Mathew was pos ta have already gotten, i tried ta move a pice of that granite off her tub my back started burnin, started paintin hand rail in basement havin ta get in odd postions ta pain ot got my lower back ta burning again n this morning it killin me can hardly move, sry
>
> Mr. Cobble: Dang I hope it gets to feeling better bro! I mite need to come & grab that little ladder & fan from u. It's hot up n here
>
> Mr. Cobble: Did u grab my little ladder from Brentwood & fan?
>
> Mr. Jewell: yea
>
> Mr. Jewell: n mine n ur paint rollers n some empty buckets
>
> Mr. Jewell: screens
>
> Mr. Cobble: Ok cool, is it ok if I come grab ladder & the fan?
>
> Mr. Jewell: yea

August 4, 2014:

---

[1] The text messages contain many grammatical errors. Because persons using text messaging as a communication medium typically misspell or shorten words, the errors have not been marked.

Mr. Cobble: How's that back feeling?

Mr. Jewell: sore, doc said he thinks my back is havin muscle spasams but without xrays he's only guessin, gave me a script for muscle relaxer n steriods, and wants me to rest til the 8th but come back on the 6th for a follow up. But I cant afford to be off a week, I used my insurance for the visit n meds, mite afta do comp claim

August 13, 2014:

Mr. Jewell: Hey bro, outa meds for 3 days n back still hurtin, need to go to doc again. Do u have workmans comp ? If so need the info

August 14, 2014:

Mr. Cobble: What up bro, I'm exempt from workers comp. I called my insurance company this morning who I have liability with & he;s checking into it to see if it covers anything or anybody. I'll let u know when I hear back. Hope it gets to feeling better.

Mr. Jewell: ight

August 15, 2014:

Mr. Jewell: u got anything for me, insurance info, somethin for me ta do or [a] check for what u owe me from the other week ?

August 16, 2014:

Mr. Cobble: What up man, I guess u filed a claim with work comp on me & they called Arcus yesterday. I can't do anything for them anymore. One of the owners at Arcus called me chewing me out yesterday. I can't even get my check from them now.

(Exh. 3) After this last message on August 16, 2014, the file contains no further record of text message communications between the parties.

On August 28, 2014, counsel for Cobble Construction filed a first report of injury for Mr. Jewell's claim. (Exh. 8). That same day, counsel also filed a notice of claim denial. The stated reason for denying the claim was that Mr. Jewell was not an employee of Cobble Construction. (Exh. 9)

On August 29, Mr. Jewell sought treatment for his back from Dr. Charles Kaelin. The medical history notes indicate that Mr. Jewell injured his back while lifting a granite counter top at work. (Exh. 1) He had received steroid injections and pain medication. The pain had persisted for

4

more than a month. Dr. Kaelin diagnosed lumbar radiculopathy and muscle spasm. He prescribed Flexeril and Mobic and ordered physical therapy treatment. Dr. Kaelin instructed Mr. Jewell to return in six weeks for a follow-up. Dr. Kaelin issued workplace restrictions that limited Mr. Jewell from lifting more than twenty pounds. (Exh. 5)

Mr. Jewell went to physical therapy and then returned Dr. Kaelin on September 26, 2014. He was released to work at full duty but was instructed to complete eight more physical therapy sessions. There is no information in the file detailing whether Mr. Jewell attended these physical therapy sessions. Dr. Kaelin did not provide an opinion on medical causation.

In addition to the text messages concerning the injury, Mr. Jewell and Mr. Cobble frequently exchanged text messages over the course of the workday during the period that Mr. Jewell worked on Cobble Construction projects. Many of the messages simply concerned coming and going and the reporting of work hours. Others contained images of completed work that Mr. Cobble requested from Mr. Jewell. Several, however, concerned the performance of work. On July 7, 2014, the following exchange occurred:

> Mr. Jewell:    man i forgot to remind u I hadda buy $32.00 worth if stuff for that 1 job.
>
> Mr. Cobble:    Ok

The parties exchanged the following messages on July 9, 2014:

> Mr. Cobble:    I'm at this job n Smyrna. U can knock out the trim n basement & get it complete today. I have another job for u start tomorrow.
>
> Mr. Jewell: Ight
>
> ***
>
> Mr. Cobble:    8:00
> 1002 E. North field[sic] Blvd.
> Murfreesboro 37130
> H-104
>
> Mr. Cobble: Shoe mold, paint & patch. I'll see u over there

On July 14, 2014, the following messages were exchanged:

> Mr. Cobble:    If u get there before me u can start painting kitchen cabinets bro.
>
> Mr. Jewell:    Ight

Mr. Cobble and Mr. Jewell exchanged the following text messages on July 15, 2014:

Mr. Cobble: If u get a chance will you pull those counter tops off in the 2 bathrooms upstairs

Mr. Jewell: Was jus thinkin i needa stop n go pull those tops

Mr. Cobble: Thanks bro

On July 28, 2014, Mr. Cobble and Mr. Jewell sent messages concerning work hours:

Mr. Cobble: U working today bro?

Mr. Jewell jus work up, didnt think we'd b able to get in til 8, susan jus reminded me of doctors app. I dont think I'll be workin taday, [illegible portion] app. sry man im jus now bein told. I'll make it up if thats ok.

Mr. Jewell: I would axed ta work sat or sun if i hadda or needed to ta take taday off

And later that same day, the following parties exchanged the following messages:

Mr. Jewell: where I needa go in the morn

Mr. Cobble: Brentwood paint the entertainment center & touch up paint.

Mr. Jewell: ight

Mr. Cobble: I need u to leave Brentwood couple hrs early & go uh mr aplands n Blackman do a quick paint on base and shoe tomorrow

Mr. Jewell: radio guy

Mr. Cobble: Yea. He just wants it touched up n a few areas. B easier to just coat it all real quick.

Mr. Jewell: ight

On July 29, 2014, the parties exchanged the following messages concerning the same job:

Mr. Cobble: Don't' worry bout Apland n Blackman today.

6

Mr. Jewell:     k

The following exchange occurred on July 31, 2014:

Mr. Cobble:     I'm going to stop by lowes n Mboro & then I can meet u off the Lavergne exit & give u materials & green paint

Mr. Coble:      Give me a shout

Later that day, the parties exchanged the following messages:

Mr. Cobble:     Do u think u can finish the punchlist n Brentwood? That job I was telling u about is n Mboro & it's a lot more than I thought.

Mr. Jewell:     will try, should b able to, need access panel, mud. mite need help hangin mirror

Mr. Cobble:     Is there enough regular mud to skim those couple patches?

Mr. Jewell:     no

Mr. Cobble:     Do u have pressure washer?

Mr. Jewell:     jus checked susan said its at step sons hour n he is on the road

Mr. Cobble:     Ok, I'll get that mud there soon as I can tomorrow

Mr. Cobble:     and acess

Mr. Jewell:     k

On August 1, 2014, Mr. Cobble and Mr. Jewell sent the following messages:

Mr. Cobble:     Can u go by lowes & get what u need & call [Matthew] to pay for it. I'm going to b here for a hr or so buddy

Mr. Jewell:     number

Mr. Cobble:     (615) 653-8441
                Matthew

Mr. Jewell:     ight

7

Mr. Cobble:    Thanks bud

Mr. Jewell:    3 ceiling register vents

(Exh. 3) A Dispute Certification Notice (DCN) was filed with the Court on September 29, 2014. Mr. Jewell filed a Request for Expedited Hearing and Cobble Construction filed one as well. On October 9, 2014, the parties appeared via telephone for an expedited hearing to determine if Mr. Jewell is entitled to temporary disability and medical benefits. Their arguments and contentions are detailed below.

## Employee's Contentions

Mr. Jewell seeks back temporary total disability for time he missed from work due to the injury as well as medical benefits. He maintains that he was an employee. Mr. Jewell argues that he did not have his own tools other than a hammer, tape measure, pencil, tool belt, and one paint brush. He stated that he had to use Mr. Cobble's paint brushes, ladder, and rollers. Mr. Jewell maintains that he was not free to take on other work and that he was not paid to perform work for the Nolensville Post Office.

Mr. Jewell argues that he was working in the course and scope of his employment when he attempted to lift the granite. He claims that the scope of his work, as he understood it, was to do whatever the homeowner or Mr. Cobble wanted him to do.

Mr. Jewell denies that he was evasive in answering questions about an alleged 2007 back injury. Mr. Jewell admits that he contacted his workers' compensation insurer about filing a claim but did not follow through because he found out that he was not covered under the policy.

## Employer's Contentions

Mr. Cobble argues that Mr. Jewell is not entitled to any benefits because he was an independent contractor, not a Cobble Construction employee. Mr. Cobble maintained that Mr. Jewell controlled the type of work that he performed and did his work without instruction or direction. Mr. Cobble also stated that Mr. Jewell made his own hours, provided his own tools, and did work for other entities such as the Nolensville Post Office. Mr. Cobble claims that he simply gave Mr. Jewell a list of things that needed to be done and Mr. Jewell did them.

Mr. Cobble further argued that, even if Mr. Jewell is determined to be an employee of Cobble Construction, he is still not entitled to workers' compensation benefits because he did not suffer an injury within the course and scope of his employment. Mr. Cobble and Arcus both maintain that lifting the granite was outside the scope of Mr. Jewell's employment duties.

In addition, Mr. Cobble and Arcus both argued that Mr. Jewell was not a credible witness. They maintain that Mr. Jewell was less than forthcoming when questioned about a previous back injury and did not admit having filed a workers' compensation claim for his back in 2007 until confronted by statements verifying the claim.

8

## Findings of Fact and Conclusions of Law

### *Standard Applied*

When determining whether to award or deny benefits, a workers' compensation judge must decide whether, based on the evidence introduced at the Expedited Hearing, the moving party is likely to succeed on the merits at the Compensation Hearing. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6). Employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

Expedited hearings are governed by Tennessee Code Annotated section 50-6-239(d) which provides the following in pertinent part:

> (1) Upon motion of either party made at any time after a dispute certification notice has been issued by a workers' compensation mediator, a workers' compensation judge may, at the judge's discretion, hear disputes over issues provided in the dispute certification notice concerning the provision of temporary disability or medical benefits on an expedited basis and enter an interlocutory order upon determining that the injured employee would likely prevail at a hearing on the merits.
>
> \*\*\*
>
> (4) If a motion for temporary disability or medical benefits is denied on the basis that the claim is not compensable, the proceeding shall continue according to the procedure provided in subsection (c) unless the employee files a request for an appeal to the workers' compensation appeals board.

Tenn. Code Ann. § 50-6-239(d)(1), (4). In addition, the "Mediation and Hearing Procedures" governing practice in the Court of Workers' Compensation Claims provides the following:

> After a case is placed on the docket, if there is a dispute over temporary disability or medical benefits, either party may request an expediting hearing of the issue of temporary disability or medical benefits by indicating its desire for an expedited hearing on the request for hearing form or by a filing a separate motion. The indication of the desire for an expedited hearing on the request for hearing form shall serve as the motion for expedited hearing.

Tenn. Comp. R. & Regs., 0800-02-21-.14(1).

9

*Factual Findings*

The Court finds that Mr. Cobble offered Mr. Jewell employment at the rate of $18.00 per hour. The Court finds that the work to be performed was general construction work that was not limited to painting. The Court finds that on August 2, 2014, Mr. Jewell suffered an injury to his back while attempting to lift a piece of granite at a job site. The Court finds that Mr. Jewell's employment relationship with Cobble Construction was terminated by Mr. Cobble on August 16, 2014. Based on the parties' admissions, the Court finds that Cobble Construction did not have workers' compensation insurance coverage. The Court finds that Arcus was the general contractor on the date of injury and Cobble Construction was as subcontractor of Arcus.

*Application of Law to Facts*

The first issue that must be determined is whether Mr. Jewell was an independent contractor or Cobble Construction employee. Cobble Construction and Mr. Jewell established an employment relationship on June 12, 2014, when Mr. Cobble offered Mr. Jewell work at the rate of $18.00 per hour and Mr. Jewell accepted the offer. To say that their business relationship was informal is an understatement. There were no clear working hours, and Mr. Jewell usually did not know where, or if, he would be working until shortly before his services were needed. Additionally, payment to Mr. Jewell for his services was often late. Nevertheless, for the reasons set forth below, the Court finds that this was an employee/employer relationship.

I.      Mr. Jewell was an employee of Cobble Construction

Tennessee law provides the following concerning the determination of whether an individual is an employee or an independent contractor:

> In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
>
> > (i) The right to control the conduct of the work;
> > (ii) The right of termination;
> > (iii) The method of payment;
> > (iv) The freedom to select and hire helpers;
> > (v) The furnishing of tools and equipment;
> > (vi) Self-scheduling of working hours; and
> > (vii) The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(11)(D)(2014). Whether claimant is an employee or independent contractor depends upon the nature of business of alleged employer, the way it is conducted, and the claimant's relationship to that business. *See Seals v. Zollo*, 327 S.W.2d 41 (Tenn. 1959).

a.      Mr. Cobble maintained primary control over the work to be performed

10

While no single factor is determinative when deciding whether a worker is an employee or an independent contractor, the Supreme Court has "repeatedly emphasized the importance of the right to control the work when distinguishing employees and independent contractors, the relevant inquiry being whether the right existed, not whether it was exercised." *See Galloway*, 822 S.W.2d at 586.

Mr. Cobble maintains that Mr. Jewell had control over the manner in which the work was to be performed. In making this argument he relies on the fact that Mr. Jewell often completed projects on his own. Mr. Cobble maintains that he gave Mr. Jewell a list of tasks to complete and expected Mr. Jewell to complete them. Mr. Jewell maintains that he did not have control of the manner in which the work was performed. He agrees that he often completed jobs without direct supervision but argues this was to be expected. Mr. Jewell had thirteen years' experience in the construction industry; therefore, it would not have made sense for Mr. Cobble to direct him in every task to be completed.

Several key facts point to the fact that Mr. Cobble had ultimate control over the work. First, Mr. Cobble maintained the work schedule. Mr. Jewell never knew where he was working, or whether he even would be working, until informed by Mr. Cobble. Mr. Cobble told Mr. Jewell where to go and Mr. Jewell went to the site and completed the work. Mr. Jewell never solicited the work and had no control over when the work was to be completed.

Second, Mr. Cobble determined the quality of the work. Mr. Jewell was asked to send a picture of each task after he completed it. Furthermore, he was required to provide touch-up work to a completed project at the direction of Mr. Cobble. Mr. Cobble even went so far as to suggest how Mr. Jewell should complete the assignment. On July 28, 2014, in reference to the completion of an entertainment center, Mr. Cobble told Mr. Jewell that it would "B [sic] easier to just coat it all real quick."

Finally, Mr. Cobble instructed Mr. Jewell to take actions to clean up at job sites. Mr. Jewell testified that Mr. Cobble instructed him and another Cobble Construction employee to clear everything off the floor at the Krickbaum house in preparation for the floor installers. He also asked Mr. Jewell to wipe down a floor following a grout job at another project on July 30, 2014. These facts indicate that Mr. Cobble had ultimate responsibility for the worksite and that he instructed Mr. Jewell to take action to complete these responsibilities. Accordingly, the Court finds that Mr. Cobble controlled the work that Mr. Jewell performed.

b.      Mr. Jewell was paid by the hour instead of by the job.

The method of payment is also a factor to be considered when determined whether a worker is an employee or an independent contractor. Tenn. Code Ann. § 50-6-102(11)(D)(iii) (2014). In this case, Employee was paid by hour via a personal check on a weekly basis. He was not paid by the job and his compensation was not directly tied to the completion of any job. In fact, the Court understands that Mr. Jewell would have been paid for the hours he worked irrespective of whether the job was completed. Payment in this manner is more indicative of an employer/employee relationship rather than an independent contractor who is hired to complete a project or set of

11

projects with payment to be made upon completion.

The facts also showed that Mr. Cobble paid Mr. Jewell at a lower rate than what was first offered. Text messages between the parties show that Mr. Cobble offered Mr. Jewell full time work at the rate of $18.00 per hour. However, Mr. Jewell testified, and the paychecks confirm, that Mr. Cobble paid him only $17.00 per hour. Mr. Cobble did not deduct social security or income tax from Mr. Jewell's checks. While this factor may be indicative of an independent contractor arrangement, it is not controlling. *See Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218 (Tenn. 1985).

In this case, the Court finds that the fact that Mr. Jewell was paid on a weekly basis and the fact that payment was based on number of hours worked rather than the completion of a specific job or project indicates an employer/employee relationship.

c.    Mr. Cobble furnished tools and supplies for Mr. Jewell.

The functioning of tools and equipment must also be considered when deciding whether a worker is an employee or an independent contractor. Tenn. Code Ann. § 50-6-102(11)(D)(v) (2014). While the furnishing of tools and equipment by an employee is a factor to be considered it "is insufficient, without more, to establish the relationship of an independent contractor." *See Carver*, 690 S.W.2d at 221.

Here, the parties presented testimony concerning the furnishing of tools. Mr. Cobble stated that Mr. Jewell furnished his own tools and equipment. Mr. Jewell stated that he had some tools, but that he did not have a ladder or paint rollers when he started work for Cobble Construction. He later admitted that he did have paint rollers and the text messages exchanged between the parties on August 3, 2014, shows that Mr. Jewell did have paint rollers at that time. The parties also discussed a ladder in that same text exchange. It is unclear who owned the ladder but clear that Mr. Jewell had possession of it at that time. Mr. Jewell claims it belonged to Mr. Cobble.

The text messages also showed that Mr. Cobble reimbursed Mr. Jewell or made direct payment for materials to be used on the job site. Mr. Cobble reimbursed Mr. Jewell $32.00 for materials he purchased for one job. He also made direct payment for materials to be used at another job. The Court finds that this direct purchasing and provision of materials is more indicative of an employer/employee relationship than an independent contractor. The Court finds that this factor weighs in favor of a finding that Mr. Jewell is an employee of Cobble Construction.

d.    Mr. Jewell was allowed to set his hours.

The authority to control a worker's schedule is also a consideration. Tenn. Code Ann. § 50-6-102(11)(D)(vi) (2014). In this case, Mr. Cobble had sole responsibility for scheduling the work. Mr. Cobble gave Mr. Jewell explicit instructions on where to go and what to do each day. However, for the most part, Mr. Jewell had the ability to end his day essentially when he pleased with a few exceptions. There were a few times that Mr. Cobble instructed Mr. Jewell to come to another jobsite after finishing his work at the assigned the site. However, the record shows this happening on only a few occasions. Based on the facts, the Court finds that Mr. Jewell had control of the hours he

12

worked.

### e. Freedom to provide services to other entities

Whether a worker is allowed to perform work for others is another element that guides analysis of whether an employee/employer relationship exists. Tenn. Code Ann. § 50-6-102(11)(D)(vii) (2014). Here, Mr. Cobble testified that Mr. Jewell had the ability to perform other work if he wished. In fact, Mr. Cobble testified that Mr. Jewell was performing work for two other entities, the Nolensville Post Office and Special Touch Restoration, while working on the Cobble Construction projects. Mr. Jewell admitted that he performed some work for the Nolensville Post Office but claims to have received no money for the work. Instead, he claims he did the work for free and to assist his stepson who was a post office employee. Neither side stated how often Mr. Jewell worked for either Special Touch or the Nolensville Post Office. However, Mr. Jewell could not have worked there very often as his paychecks reflect that Mr. Jewell was working at least thirty-five hours each week for Cobble Construction. Furthermore, when the parties first began their employment relationship, Mr. Cobble told Mr. Jewell that his work would be full time. However, there was no discussion about exactly what was meant by this phrase. Additionally, there is no evidence that Mr. Jewell was ever told that he could not perform work for other entities. Based on these facts, the Court finds that Mr. Jewell was free to offer services to other entities if he wished to do so.

The facts in this case show that Mr. Cobble had control of the work that Mr. Jewell performed. He told Mr. Jewell where to go, and when to go there. Additionally, Mr. Jewell was paid on an hourly basis rather than based on the completion of a job or project. The facts further show that Mr. Cobble supplied Mr. Jewell with some tools and most, if not all, of the supplies necessary to complete the assigned work. Mr. Cobble also reimbursed Mr. Jewell for items Mr. Jewell purchased to complete the work. These facts indicate that Mr. Jewell was an employee of Cobble Construction.

### II. Lifting the granite slab was within the scope of Mr. Jewell's work for Cobble Construction.

Cobble Construction and Arcus both argue that even if Mr. Jewell is found to be an employee of Cobble Construction, he still cannot receive benefits because the incident which resulted in his back injury was outside the scope of his work as a Cobble Construction employee. The Court is not persuaded by this argument.

Under Tennessee Workers' Compensation law, an "injury" or "personal injury" by accident is compensable whenever "the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014). "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *Id.* (internal quotations omitted). The law also provides some exceptions by prohibiting compensation in cases where the injury was caused by the employee's willful misconduct, intentional self-affliction, intoxication, willful failure to

13

follow a safety rule, willful failure to perform a duty required by law or voluntary participation in a work-sanctioned recreation, social or athletic event. Tenn. Code Ann. § 50-6-110(a) (2014).

Here, Cobble Construction and Arcus maintain that someone other than Mr. Jewell was responsible for moving the granite. They maintain that Mr. Jewell knew this and that by attempting to lift the granite he moved outside the scope of his work. This argument is flawed for several reasons.

First, it is not clear from the evidence presented that Mr. Jewell *knew* he was not supposed to move the granite slab. Mr. Jewell testified that he and another Cobble Construction employee picked the granite up off the floor and placed it in the area around the bathtub on a previous occasion. Mr. Jewell stated that he did this when Mr. Cobble instructed him to get the items off of the floor so that the floor crew could perform its work. While Mr. Cobble maintained steadfastly that he never specifically told Mr. Jewell to lift the granite, he did not deny Mr. Jewell's assertion that he had instructed Mr. Cobble to clear items from the floor at the worksite. Additionally, the text messages exchanged on July 15, 2014, show that Mr. Cobble had instructed Mr. Jewell to move countertops on a previous occasion. Accordingly, Mr. Jewell had performed similar tasks for Cobble Construction before and there is nothing in the evidence showing that Mr. Jewell had been told not to move the granite slab in this case.

However, even if Mr. Jewell knew he was not supposed to move the granite, this still would not bar his claim as his action could certainly not be considered misconduct. In fact, as explained further below, Mr. Jewell's attempt to move the granite, although foolhardy, falls within the scope of general construction responsibilities. Furthermore, even if it could be argued that Mr. Jewell assumed the risk of injury associated with lifting the granite slab or was negligent in his attempt to do so, Cobble Construction cannot raise this as a defense because it has failed in its statutory duty to provide workers' compensation coverage for its employees. *See* Tenn. Code Ann. § 50-6-111.

Second, the scope of Mr. Jewell's work included general construction duties. While Mr. Jewell primarily painted for Cobble Construction, he also testified that he performed several other tasks in the completion of Cobble Construction projects. He testified that he built risers, installed a vanity, reinstalled a sink, installed interior doors, and installed a floor. The text messages exchanged between the parties confirm that Mr. Jewell performed general construction work for Cobble Construction. Moving the granite fell directly in-line with Mr. Jewell's established practice of performing general construction work for the company.

Finally, Mr. Jewell testified that Ms. Krickbaum expressed concern about the safety of the granite slab. She feared that it could fall and hurt a person or damage the floor. Ms. Krickbaum stated that she never asked Mr. Jewell to move the slab. The Court finds her testimony credible. However, the Court finds the testimony of Mr. Jewell credible as well. He stated that he moved the granite because he felt a responsibility to do so after placing it in the bathtub area. Keeping the jobsite safe certainly falls within the scope of general construction. For these reasons, the Court finds that moving granite slab was within the scope of Mr. Jewell's work for Cobble Construction.

III.    Mr. Jewell is likely to prevail at a hearing on the merits and is entitled to past temporary total disability and medical benefits.

Under Tennessee Workers' Compensation law, an "injury" or "personal injury" by accident is compensable whenever "the injury is caused by a specific incident, or set of incident, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014). "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *Id.* (internal quotations omitted).

In this case, Mr. Jewell has alleged that he suffered an injury while lifting a slab of granite in the course and scope of his employment for Cobble Construction. Upon attempting to lift the granite, Mr. Jewell suffered an injury to his back. Mr. Jewell timely reported the incident to Mr. Cobble. Cobble Construction did not have workers' compensation coverage and Mr. Jewell then went to see Dr. Charles Kaelin who diagnosed lumbar radiculopathy and muscle spasms. Dr. Kaelin also opined that Mr. Jewell could have a disc bulge. Accordingly, Mr. Jewell has presented a *prima facie* case for a compensable claim and would likely prevail on the merits if medical causation is established.

### a.    Medical benefits

Tennessee law requires an employer to provide "…free of charge to the employee such medical and surgical treatment…made reasonably necessary by accident as defined in this chapter[.]" *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). In this case, Mr. Jewell has suffered back injury and is entitled to medical care to treat the injury. Dr. Kaelin has opined the Mr. Jewell needs further physical therapy and may need additional imaging studies to determine if he has a bulging disc. The first step in providing medical care is the provision of a panel of treating physicians. Mr. Jewell shall be provided a panel of treating physicians. In addition, Mr. Jewell is entitled to recover any out of pocket costs for medical expenses.

### b.    Temporary disability benefits

An employee is entitled to receive temporary total disability benefits pursuant to Tennessee Code Annotated § 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work. *See Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978). Entitlement to temporary total disability benefits ends whenever an employee is able to return to work or reaches maximum medical improvement (MMI). *See id.; Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, 776 (Tenn. 2000).

The week after he was injured, Mr. Jewell informed Mr. Cobble that he had been advised by his doctor to rest for a week due to his back injury. Dr. Kaelin issued workplace restrictions that prohibited Mr. Jewell from lifting more than twenty pounds. The restrictions were in place from August 29 to September 26, 2014, a period of twenty-nine days. It appears that Mr. Cobble may have had work for Mr. Jewell to perform within his restrictions. However, neither party testified that an offer was made. In any event, the Court finds that Mr. Jewell's employment with Cobble

15

Construction ended on or around August 16, 2014, and further finds that the employment ended through termination. Accordingly, Mr. Jewell is entitled to receive back temporary disability benefits for a period of twenty-nine days. His average weekly wage of $502.92 equals a compensation rate of $335.28 or $47.90 per day. Mr. Jewell shall be paid back temporary total disability in the amount of $1,389.10.

IV.    Arcus is liable for the benefit payments

Tennessee Code Annotated section 50-6-113 provides the following in pertinent part:

> (a) A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.
> (b) Any principal contractor, intermediate contractor or subcontractor who pays compensation under subsection (a) may recover the amount paid from any person who, independently of this section, would have been liable to pay compensation to the injured employee, or from any intermediate contractor.

Tenn. Code Ann. § 50-6-113(a)-(b) (2014).

Here, Arcus has admitted that it was the principle contractor on the date Mr. Jewell suffered his injury. The parties all agreed that Cobble Construction did not have any active workers' compensation policy. Mr. Jewell was an employee of Cobble Construction. Accordingly, Arcus is liable for the benefit payments to be made to Mr. Jewell.

**IT IS, THEREFORE, ORDERED** as follows:

1. Arcus Restoration shall provide Mr. Jewell a panel of orthopedic specialists for treatment of his injury from which Mr. Jewell shall select a physician to serve as the authorized treating physician.

2. Arcus Restoration shall provide payment for all reasonable and necessary medical treatment provided by the physician selected from the panel. Mr. Jewell shall furnish medical bills to Arcus or Arcus shall arrange to have their insurer billed directly.

3. Arcus Restoration shall pay Mr. Jewell back temporary total disability payments in the amount of $1,389.10.

4. **This matter is set for Initial Hearing via teleconference on February 12, 2014, at 10 a.m. (CST). Instructions on how to participate in the teleconference are included below.**

16

5. The clerk is instructed to provide a copy of this order to the Mediating Specialist so that the Specialist may refer Employer for assessment of a civil penalty for Employer's failure to file a wage statement within the timeframe provided by Rule 0800-02-21-.10(3) of the Tennessee Comprehensive Rules and Regulations.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

ISSUED AND FILED WITH THE ADMINISTRATOR ON DECEMBER 15, 2014.

**Joshua Davis Baker**
**Workers' Compensation Judge**

### Initial Hearing:

An Initial Hearing has been set with Judge Joshua Davis, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing. Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CST).

### Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 16th day of December, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Kevin Jewell | | | | | x | quazykevin@yahoo.com |
| Eric Hennessee | | | | | x | Eric.hennessee@mitchellattorneys.com |
| David Drobney | | | | | x | ddrobney@manierherod.com |

**Joshua Davis Baker**
**Workers' Compensation Judge**

19